CITY OF TAMPA v. JOHN D. COLGAN, *et al.*

163 So. 577.
Opinion Filed October 15, 1935.
Rehearing Denied November 2, 1935.

*Alonzo B. McMullen* and *Ralph N. Marsicano,* for Appellant;

*Sparkman & Knight, V. H. Knight* and *Seth Dekle,* for Appellees.

DAVIS, J.—This was a direct proceeding by a municipal government to enforce by foreclosure proceedings an alleged tax lien claimed by it against appellees' property. On a previous appeal a motion to strike certain paragraphs of defendant's answer to the City's bill was overruled and on appeal was affirmed by this Court. See City of Tampa v. Colgan, 111 Fla. 538, 149 Sou. Rep. 587. The present proceeding being, as it is, a direct effort by a tax levying authority to enforce its own asserted tax lien against its affected taxpayer's property, with no alleged rights of third

parties, such a *bona fide* tax certificate purchasers for value, being involved, nor any question of a bar by *laches* being brought into the controversy, is to be distinguished from other cases on the same subject that involve issues other than the sole issue here sought to be determined between complainant city on the one hand, and the defendant taxpayer on the other. In this connection it is to be observed that a judicial controversy involving the legality of a tax, assessment or toll is, by statute, within the cognizance of a court of equity. See Sections 1038, 1039 C. G. L., Chapter 8586, Acts 1921.

The facts of the present suit, and the legal and equitable principles upon which the chancellor entered his decree in the court below, can best be stated by here quoting in full an opinion which the chancellor prepared and filed in the Circuit Court to accompany the decree herein appealed from. The chancellor's opinion is as follows:

"In this suit the plaintiff, City of Tampa, seeks the foreclosure of municipal taxes levied against certain real estate described as Lots 66, 67, 68 and 69, Block 6 of Davis Islands, and the improvements located thereon, for the years 1929, 1930, and 1931. It appears from the bill and exhibits thereto attached that for each of these years the real estate in question was valued at $15,000.00 and the improvements thereon at $195,000.00, making a total assessed valuation of $210,000.00, and that based upon such valuation the total amount of the taxes levied for each year was $3,780.00. The defendant, Mirasol, Incorporated, owner of the premises, attacked the assessment for each of said years upon several grounds which are summarized in the following excerpts from the amended answer of said defendant:

"(1) Because the assessor: 'systematically, willfully, de-

liberately and intentionally discriminated against said property, as compared with similar property liable to assessments owned by other taxpayers similarly situated, in that this defendant's property was assessed for each of said years at $210,000.00, as shown by copy of assessment roll attached to complainant's bill of complaint, which sum was grossly, obviously and flagrantly excessive, and was more than four times the full cash value, as defined by said Ordinance hereinabove referred to, and amounts to a confiscation of its property, and denies to this defendant due process of law and the equal protection of the law.'

"(2) Because the assessor: 'Perpetuated a fraud upon this defendant in assessing its only species of property, to-wit, real estate, at more than double its full cash value, while personal property consisting of stocks of merchandise located within the City of Tampa, and taxable therein, worth many millions of dollars, were for said years systematically, intentionally and arbitrarily assessed by said assessor at less than 25% of its full cash value.'

"(3) Because the assessor: 'deliberately, willfully and intentionally, systematically, knowingly and arbitrarily refused, neglected and omitted to assess any mortgages standing of record in the office of the Clerk of the Circuit Court, Hillsborough County, Florida, and owned by citizens of the City of Tampa, as of January 1st, 1929, 1930, and 1931, respectively, whatsoever, although same were subject to taxation and amounted to several million dollars.'

"(4) Because the assessor: 'deliberately, intentionally and willfully omitted from the tax rolls, and failed to assess for taxation, for the years 1929, 1930 and 1931, all stocks, bonds, promissory notes and accounts, which on January first of each years, were owned by residents, taxpayers of

the City of Tampa, Florida, and subject to, and should have been assessed for taxation in said City for said years.'

"A motion to strike the paragraphs of this answer setting up the invalidity of the assessments was filed by the City and was overruled. On appeal, this ruling was affirmed. See City of Tampa v. Colgan, *et al.,* 111 Fla. 538, 149 So. 587. Thereafter, the City filed a replication, paragraph 1 of which denied the affirmative matter contained in the answer of the defendant, Mirasol, Inc., and paragraph II of which asserted that said defendant was estopped to question the validity of the assessments, because John D. Colgan, the predecessor in title of said defendant, had acquired title to the premises in question for the sum of $15,500.00, by purchase at the foreclosure sale decreed in a suit to which the City was a party previously brought for the foreclosure of a mortgage or deed of trust embracing said premises, and because in reporting said sale to the Court the master had recited that the property was incumbered by taxes amounting to approximately $23,000.00, and the Court has recognized the validity of said taxes and had taken the same into consideration in confirming said sale. On motion filed by the defendant, Mirasol, Inc., the second paragraph of this replication was stricken upon the ground that the facts therein alleged were insufficient to constitute an estoppel. The cause was then referred to a master for the taking of testimony, with directions to report the same, together with his findings of fact and of law, to the Court. After the taking of testimony, the master filed his report, incorporating therein findings to the effect that for each of the years in question the assessment against the improvements should be reduced from $195,000.00 to $100,000.00, but upholding the assessment against the real estate in the amount of

$15,000.00. Exceptions to this report have been filed by both the plaintiff and by the defendant, Mirasol, Inc.

"The second, third and fourth grounds of the attack upon the assessments in controversy are essentially similar in nature, being predicated upon the alleged under-assessment or non-assessment of various species of personal property located within the City of Tampa, and will be first taken up and considered together. With respect to these grounds, the master found that the allegations of the answer had not been sustained by the proofs. I concur in this finding. The law presumes that taxing officials have faithfully performed their official duties, and when the correctness of their official acts is challenged the burden of proof is upon the complaining party. Camp Phosphate Co. v. Allen, 77 Fla. 341, 81 So. 503; City of Tampa v. Palmer, 89 Fla. 514, 105 So. 115; Hackney v. McKenney, 113 Fla. 176, 151 So. 524. It has also been held in this State that a mere omission to assess some property subject to taxation or the using of unequal valuations in the making of assessments, if due simply to oversight or error of judgment on the part of assessing officer, will not render illegal an assessment against other property, and that material injury, as the result of omission to assess property subject to taxation, or unequal valuations in assessments as made, must be shown in order to warrant judicial relief. Folsom v. Bank of Greenwood, 97 Fla. 426, 120 So. 317. Although there is testimony in this case tending to show that the stocks of merchandise of a few mercantile concerns in the City were assessed at less than their actual worth, and that a portion of the intangible property subject to taxation by the City was not assessed at all, the proofs fall far short of showing under-assessment or non-assessment of such classes of property to any appreciable extent or as a result

of any intentional acts or omissions on the part of the assessor.   See City of Tampa v. Kaunitz, 39 Fla. 683, 23 So. 416.

"The first ground of attack upon the assessments presents a question of greater difficulty.   Here the charge is that defendant's property was willfully discriminated against, as compared with other similar property, in that the same was assessed at $210,000.00, which sum was alleged to be grossly, obviously and flagrantly excessive, and to be more than four times the full cash value thereof.

"The principles of law to be applied in a case in which equitable relief from taxes is sought on the ground that property has been overvalued or illegally assessed, are well settled in this State.   The general rule is that excessive valuation *per se is* not sufficient as a ground of equitable jurisdiction, the impossibility of attaining exact equality in the distribution of tax burdens is recognized, and the tax assessor is accorded a wide discretion in the valuation of property for the purposes of taxation.   When property has been overvalued, the taxpayer must ordinarily complain to the assessor and pursue his remedy before the administrative body provided for the equalization of assessments before he can resort to a court of equity for relief.   Even when such action is taken, the fixing of a valuation by the assessor and the equalization thereof by the board are regarded as administrative acts involving the exercise of discretion, which generally will not be controlled by the courts. On the other hand, it is equally well established that equity will grant relief where an assessment is so obviously and flagrantly excessive as to amount to a legal fraud upon the taxpayer, even though the assessor may have acted in good faith in making the assessment.   A court of equity will also intervene where the assessment is attended by illegality,

that is, where, independently of the exercise of a discretion as to value, there appears, as a matter of law, prejudicial and material error in the making of the assessment. See City of Tampa v. Palmer, *supra.* Under such circumstances, it is not necessary that the taxpayer shall have first appealed to the equalization board for relief. Graham v. City of West Tampa, 71 Fla. 605, 71 So. 926.

"It appears that the property involved in this suit consists of four lots in a development in Tampa known as Davis Islands, upon which there is situated a modern combination hotel and apartment building containing approximately sixty hotel rooms and sixteen apartments.

"With regard to the valuation of $15,000.00 which was placed upon these four lots, I am of the opinion, after carefully reviewing the testimony, that the owner has failed to prove either any illegality in the making of the assessment or an over-assessment which would warrant the Court in granting relief, particularly in view of the fact that neither the owner nor its predecessor in title ever complained of the assessment to the tax assessor or to the equalization board. The evidence fails to show that in assessing the real estate the assessor did not give due regard to existing conditions and circumstances of character, locality, utility and other matters affecting value, or that the assessment was not made in the manner provided by law. Nor is it established that this assessment was out of line with those against similar properties, or even that it exceeded the value of the lots. On the contrary, there is testimony in the record tending to sustain the valuation placed on the lots. In any event, no such abuse of discretion on the part of the assessor has been shown as would justify the Court in disturbing the assessment.

"With repect to the assessment against the building, how-

ever, an entirely different situation is presented. Under an ordinance of the City, all real and personal property is required to be assessed for purposes of taxation at its full cash value which is thereby defined as 50% of its fair market value. In arriving at the fair market value in this instance, to be used as a predicate for ascertaining the full cash value, it appears that the assessor used only the estimated cost of reproducing the building, less depreciation. He did not take into consideration any other factors affecting its value, such as location and surroundings, its character, its general utility, the rental or income which can be derived from it, and the probability of future development in the district where the property is located. This method of assessment was clearly erroneous. The original cost of construction or the estimated cost of reproduction, less depreciation, or, in other words, the structural value, of a building may be considered, but only as an aid in arriving at the market value. It is not to be adopted as the sole or conclusive criterion of value. 61 C. J. page 646. People, *ex rel.* Colgate Inn, Inc., v. Assessors of Town of Hamilton, Madison County, 132 Misc. Rep. 506, 230 N. Y. S. 134.

"It follows that this method of assessment, if shown to have been materially prejudicial in this case, constitutes a sufficient ground of equitable interference. See City of Tampa v. Palmer, *supra,* where it is said: 'An "illegal assessment," that is, an assessment wherein, independent of the exercise of a discretion as to value, there appears prejudicial and material error in matter of law, would also constitute grounds for equitable interference.'

"It therefore becomes necessary to determine whether or not the improvements were overvalued, and if so, to what extent. Without attempting to review in detail all of the testimony bearing on this question, I am of the opinion that

the evidence does show that the building was grossly over-assessed. To sustain its contention of over-valuation, the owner called numerous witnesses, including a lessee of the hotel and several realtors, whose testimony, when all considered, established the following facts: that the building, being situated at some distance from the downtown section of the City of Tampa, is not well located for successful operation as a commercial hotel; its interior arrangement and construction is not conducive to a practical commercial success; that for the greater part of the time in question, the building was vacant, and that the receiver in the foreclosure proceeding who had possession of the property from about January 1, 1930, until December, 1931, did not undertake to operate the same; that the building could not be leased for an amount sufficient to pay the annual taxes assessed against it; that sufficient revenue could not have been obtained from operating the hotel and from renting the apartments to pay the operating costs and other charges; that it is doubtful whether the property can ever be expected to yield a fair return based upon an investment value of $50,000.00, and though making due allowance for whatever incompetency in management suffered, yet from the standpoint of actual or potential income under reasonably successful management, the building was not assessed in proportion to other buildings of similar character. It is also shown that during the year 1931, the property was extensively advertised and offered for sale at the price of $100,000.00, which included the furniture and other personal property, but that a purchaser could not be found. Although the plaintiff produced several witnesses who testified that the building was not over-valued, either abstractly or in relation to similar properties, it appears that their opinions of value were based upon the item of cost, and

are not sufficient to overcome the probative effect of the specific facts proved by the owner. My conclusion is that because an illegal method of assessment was employed by the assessor, and because this method resulted in an assessment which was so grossly excessive as to amount to a legal fraud, the owner is entitled to have the assessment against the improvements for each of the years 1929, 1930, 1931 reduced from $195,000.00 to $100,000.00, which latter figure was found by the master to be the proper valuation upon which taxes should be assessed for said years.

"In defense of the action of the assessor in the method of assessment employed, it is only fair to say that he followed the method of his predecessor in office, and nothing herein may be construed to reflect upon either his ability, character, or fidelity to his duties.

"Defendant, being fearful that perhaps his answer does not embrace the exact grounds of defense as developed in the proof, has asked leave to amend the answer to conform to the proof, and I can see no reason why such leave should not be granted.

"Counsel will submit a final decree in accordance with the views herein expressed.

"Dated at Tampa, Florida, this 2nd day of March, A. D. 1935.

"L. L. PARKS,
"*Circuit Judge.*"

Without giving our unqualified approval to the chancellor's denunciation as illegal and unlawfully arbitrary *per se,* the particular method adopted and followed by the City of Tampa for arriving at "just" valuation of business properties for tax valuation purposes, as admittedly used by the City Tax Assessor in this case, as set forth in the findings made by the chancellor in his foregoing opinion, it is

obvious that the method pursued does erroneously omit to take into consideration for equalization assessment purposes the facts of "historical" value of the property involved, a consideration that cannot be ignored if a *just* valuation as contemplated by the tax assessment laws is to be achieved.*

Under the tax ordinance of the City of Tampa it is provided that all taxable property shall be assessed at its full cash value which is declared to be 50% of its fair market value.

The method of ascertainment adopted by the City Tax Assessor in applying a valuation to the defendant's hotel was to calculate it almost entirely from an inflexible reproduction cost basis computed on a cubic foot price, after taking into consideration the physical condition of the improvement. Under such procedure the major factor considered was the cost of reproduction and the physical condition of the property. There was no showing that such rule has been consistently applied to every species of im-

---

*By "historical" value is meant those factors that inevitably tend to casuistically appreciate or diminish the value of the particular property in its relation to all of the taxable property in the community. Thus the "historical" factor of vacancy or continued non-use of income-producing property, when that sort of property is being considered, may tend to diminish the *just* taxable valuation of the property below reproduction cost less depreciation, while on the contrary, the "historical" factor of profitable rental, or conduct of a profitable business therein by the owner, may tend to sustain, or even appreciate, the tax valuation as determinable by reproduction cost less depreciation. This is so, because the object of all tax valuation is to determine what is the proportional *protected* value of the subject of taxation as compared with all other taxable properties of like character receiving the protection of the law and the benefits of organized government. The constitutional requirement is that "just" valuations of property shall be made to achieve uniformity and equality of burden on taxpayers.

provements on land in the City of Tampa, such as to private dwellings and non-business properties, but only as to business properties. It is therefore apparent that the rule adopted and followed by the Tax Assessor is a special and not a general rule of the Assessor for the admeasurement of value, and as such special rule it should be dealt with in this case.

By fair market value is meant the amount of money which a purchaser willing but not obliged to buy the property would pay to an owner willing but not obliged to sell it, taking into consideration all uses to which the property is adapted and might in reason be applied. Claringbold v. Newark, 5 Boyce (Del.) 507, 94 Atl. Rep. 1102, L. R. A 1916E 1101; Metropolitan Bldg. Co. v. King County, 62 Wash. 409, 113 Pac. Rep. 1114, Ann. Cas. 1912C 943; Brenson v. Bush, 251 U. S. 182, 40 Sup. Ct. Rep. 113, 64 L. Ed. 215; Finch v. Grays Harbor County, 121 Wash. 486, 209 Pac. Rep. 833, 24 A. L. R. 644; Donovan v. City of Haverhill, 247 Mass. 69, 141 N. E. Rep. 564, 30 A. L. R. 358. Prospective value alone cannot be made the substantive basis of an assessment, but can be considered to the extent that it enters into, or is reflected in present value. Note 24 A. L. R. 649. Thus, the operation under a timber lease, whereby the timber land was made more valuable for farming purposes, has been allowed as an enhancement to the taxable value of the land. German-American Lumber Co. v. Barbee, 59 Fla. 493, 52 Sou. Rep. 292. And so has a liquor selling privilege for a particular property, although the right to sell liquors was personal to the holder. Claringbold v. Newark, 94 Atl. Rep. (Del.) 1102, *supra*.

While exact similarity between different properties is unusual, and tax assessors generally have to take many matters into consideration in determining the fair market value, the

intrinsic value of property, for purposes of taxation, is to be determined by taking into account not one, but all, favorable and unfavorable circumstances that would control the admeasurement of its *present* value were it placed upon the market to be sold by the owner.

If similar value is commonly bought and sold, the price which it brings is the best test of the value of the land under consideration and the assessors need look no further. But where an established market is non-existent the process of valuation must comprehend not only one but *all* of the influencing factors going to make up intrinsic value. Included in such factors is the idea of the property's "historical" value, both past and present, as may be determinable by a consideration of its preceding valuations for tax purposes for other years as well as any known current influences that directly operate to appreciate or depreciate the fair market value for the year under consideration.

The trial of the issues in this case, as has been pointed out, reduced itself to a determination of the single proposition whether or not the tax assessor's method of valuation of this particular hotel property for taxes for the particular years sued for became an arbitrary one when he deliberately refused to take into account, and make allowance for, the depreciating influence directly affecting the property's current "historical" value as enumerated in the chancellor's opinion. The chancellor came to the conclusion that when such other factors were allowed for, the assessment as made was arbitrary and therefore unjust and hence unlawful *pro tanto* the amount of the reduction allowed by his decree.

We cannot say after a review of the whole record that the chancellor's view in the premises is clearly wrong. Therefore, the decree based thereon will not be disturbed.

In so holding, however, we do not condemn, in any re-

spect, the general principle of valuation herein disclosed. On the contrary, we entertain the opinion that like all special rules of valuation, it has its justifiable application even in cases like this where equally important cognate factors exist that should be taken into consideration, and allowance made therefor, in applying the rule to particular cases in which the universality of the rule may work an injustice.

Affirmed.

WHITFIELD, C. J., and TERRELL, BROWN and BUFORD, J. J., concur.