66 So.2d 470 (1953)
LOFTIN et al.
v.
ANDERSON et al.
ANDERSON
v.
LOFTIN et al.
Supreme Court of Florida, en Banc.
March 17, 1953.
On Petitions for Rehearing May 8, 1953.
*471 Loftin, Anderson, Scott, McCarthy & Preston, Miami, Russell L. Frink, Jacksonville, Robert H. Anderson, William C. Steel and Francis W. Sams, Miami, for Scott M. Loftin and others, appellants and appellees.
Nichols Gaither, Green, Frates & Beckham, Wm. Clinton Green and J.B. Spence, Miami, for Mrs. Bertha Moyd Anderson and her husband R.K. Anderson, appellees, and R.K. Anderson, appellant.
TERRELL, Justice.
These cases stem from the following facts: Bertha Moyd Anderson purchased a round trip ticket from appellants entitling her to transportation from Galin, Illinois, to Miami, Florida, and return. As the train on which she embarked was approaching the Miami terminal January 14, 1950, the porter advised the passengers to make ready to vacate. Mrs. Anderson and the other passengers obeyed. The train was brought to a sudden and violent stop whereby Mrs. Anderson was thrown to the floor and permanently injured. She brought this action to recover damages for personal injuries. Her husband R.K. Anderson joined in the action, claiming damages for hospital, medical and doctor's bills, including loss of services, consortium and future medical care. The trial resulted in a verdict and judgment in favor of Mrs. Anderson for $12,500 and a judgment for the defendant in response to the claim of Mr. Anderson. Defendant has appealed from the judgment in favor of Mrs. Anderson and Mr. Anderson has appealed from the judgment against him.
The primary contention of appellant is that the trial court committed error in refusing to direct a judgment for it in the case of Mrs. Anderson because her fall and injury resulted from an emergency stop to avoid colliding with an automobile that was parked on the track in front of the train. St. Louis-San Francisco Ry. Co. v. Earl, Fla., 49 So.2d 324; Louisville & N.R. Co. v. Harrison, 78 Fla. 381, 83 So. 89; Stremanos v. City of Cleveland, Ohio App., 77 N.E.2d 504; Baltimore Transit Co. v. O'Donovan, Md., 78 A.2d 647; Wayne v. New Orleans Public Service, La. App., 52 So.2d 55 and volume 2, Section 296, Restatement *472 of Torts, are relied on to support this contention.
It is true that these cases, some of them directly and others by inference, approve the sudden emergency doctrine. It is applicable to common carriers of passengers for hire, the gist of it being that when confronted with a sudden emergency arising from no fault or negligence of the common carrier, it will not be held liable for damages that follow, even though it may be later shown that if the one responsible had acted differently, the accident would not have taken place.
Appellees contend that the sudden emergency requiring rapid decision in this case, resulted from appellant's tortious conduct, and being so, the sudden emergency doctrine has no application. In support of this contention appellees point out that the emergency stop took place a short distance above 16th Street in Miami, that said street is not a regular crossing, though it has the appearance of being one in that there are several parallel tracks that are paved between the rails and for other reasons. It is further pointed out that motorists traveling from East to West on 16th Street at night frequently attempt to cross and get stalled on the main track. It is near an industrial area and well illuminated. One of the witnesses, a night watchman at one of the plants, testified that he frequently had occasion to pull stalled motorists off the main line track at 6th Street and that an automobile was demolished there about two weeks prior to the injury in question. In the case at bar the car stalled on the track about 8 P.M. (after night) and the train came along about 8:15 P.M. The occupants of the car had vanished before the train came and were never located.
The evidence also shows that when the car stalled a colored boy proceeded up the track waving a white flag and that another person who was a witness proceeded 281 feet toward the train to signal with a flash-light; he had a two cell "steel master," light in good condition and gave the engineer the emergency stop signal. The same witness testified that the Negro boy got to the large semaphore waving the white flag which by actual measurement was 685 feet from where the car stalled. He further testified that the train was at the Miami Avenue crossing 1,353 feet when he first waved the flash light and that it could be readily seen at that distance. He said he had been working at the locality since 1946 and had helped remove at least 100 stalled cars from the 16th Street crossing. The engineer testified that his train was running about 15 miles per hour; that his seat in the engine cab was eight feet above the ground; that it was 667 feet from Miami Avenue crossing to the automatic block signal; that he was 350 to 400 feet from the stalled car when he saw it and that at the speed he was traveling he could bring his train to a stop in 400 feet without application of emergency brakes. From this and other pertinent evidence appellees contend that the engineer was on notice that the train was approaching the station; that the passengers would be preparing to vacate the train and had he been observing the signals, as the rules require, there would have been no occasion for an emergency stop, but he could have brought the train to an easy stop. Appellant says that it saw the stalled car, the flag and flash signals almost simultaneously.
In view of this state of the evidence, the question arises, was appellant in position to claim advantage of the sudden emergency doctrine? The rule is settled that he cannot invoke its protection if the emergency resulted from his tortious conduct. If the engineer failed to give due heed to the warnings given and could have by doing so, brought the train to an easy stop, the sudden emergency doctrine has no application. At least under the circumstances pointed out it was a jury question and they resolved it against appellant.
The only other question presented is whether or not the trial court committed error in charging the cost of experiments, photographs, and discovery depositions to defendant.
It is conceded that all reasonable and necessary experiments, photographs and depositions may be taxed as costs, but says appellant, it was charged with the cost of an 81 page deposition when three pages *473 would have sufficed, as that was all that was used at the trial. The admission of experiments, photographs and depositions is of course a matter within the sound discretion of the trial court but nothing is more essential to proper administration of justice than keeping the cost of litigation within reasonable bounds. Attorneys as well as the court have an obligation to do this. There is no reason whatever for taxing the costs of photographs that were not used including page after page of a deposition that served no useful purpose. If such costs were imposed on the defendant they should be canceled.
The appeal of R.K. Anderson is predicated on the theory that his wife secured a judgment of $12,500, and that while he proved damages for loss of services, consortium, nurses, medical, hospital and doctor's expenses, he was awarded nothing.
On the record Mr. Justice TERRELL, Mr. Justice SEBRING, Mr. Justice HOBSON, and Mr. Chief Justice ROBERTS are of the view that the judgment in favor of Mr. and Mrs. Anderson should be affirmed except as to improper costs if any were imposed on defendant. Mr. Justice THOMAS, Mr. Justice MATHEWS and Mr. Justice DREW are of the view that judgment should be affirmed as to Mrs. Anderson and reversed as to R.K. Anderson.
It follows that the judgment is affirmed as to both Mr. and Mrs. Anderson except as to improper costs if any were found to have been imposed on defendant.
Affirmed.
ROBERTS, C.J., and SEBRING and HOBSON, JJ., concur.
THOMAS, MATHEWS and DREW, JJ., are of the view that judgment should be affirmed as to Mrs. Anderson and reversed as to R.K. Anderson.
THOMAS, Justice.
I agree to all the opinion of Mr. Justice TERRELL except that part affirming the judgment for the appellee in the case of R.K. Anderson which I think should be reversed; and except that part dealing with costs.
MATHEWS and DREW, JJ., concur.

On Petitions for Rehearing
PER CURIAM.
We are confronted with two petitions for rehearing in this cause. The first is proffered by the appellants, Scott M. Loftin and John W. Martin, as Trustees of Florida East Coast Railway Company, et al., v. Bertha Moyd Anderson and husband R.K. Anderson and the second by appellant R.K. Anderson v. Scott M. Loftin and John W. Martin as Trustees for Florida East Coast Railway Company, et al.
The petition of Scott M. Loftin and John W. Martin as trustees of Florida East Coast Railway Company, et al. v. Bertha Moyd Anderson and husband R.K. Anderson be and the same is hereby denied. The petition of R.K. Anderson v. Scott M. Loftin and John W. Martin as Trustees of Florida East Coast Railway Company, et al. be and the same is hereby granted without further brief or oral argument.
On consideration of the second petition after rehearing granted, Mr. Justice THOMAS, Mr. Justice SEBRING, Mr. Justice DREW, Mr. Justice MATHEWS and Mr. Justice HOBSON are of the view that the judgment appealed from should be reversed and a new trial awarded on the question of damages only. Mr. Chief Justice ROBERTS and Mr. Justice TERRELL are of the contrary view.
It follows that the judgment appealed from in the case of R.K. Anderson v. Scott M. Loftin and John W. Martin, as Trustees for Florida East Coast Railway Company be and the same is reversed and a new trial awarded on the question of damages only.
Reversed for a new trial.
ROBERTS, C.J., TERRELL, THOMAS, SEBRING, HOBSON, MATHEWS and DREW, JJ., concur.