LILES, Acting Chief Judge.
Appeal Nos. 6180 and 6329 grew out of the same cause and for purposes of this opinion are consolidated. They involve appeals by both sides from a final decree entered in a declaratory suit regarding tax assessment. Sunset Realty Corp. was plaintiff below, and Harry Schooley, et al. were defendants.
Plaintiff filed its suit for a declaratory decree on December 5, 1963, and alleged, among other things, that its property located in Lee County had been overassessed; that, contrary to his duties, defendant tax assessor had arbitrarily, grossly, and unlawfully overvalued plaintiff’s property; and that defendant tax assessor had assessed plaintiff’s property for ad valorem tax purposes “arbitrarily, unjustly, unfairly, and with unconscionable discrimination” in that plaintiff’s property had been unlawfully overvalued compared to property of the same class. Plaintiff also alleged that defendant tax assessor had knowingly and wilfully given certain property owners discounts in their 1963 assessments and their lands had thus been assessed at a figure below the true and just value; that defendant tax assessor had given certain land owners a “subdivider’s discount” of fifty per cent; that as a result of these practices plaintiff had been caused to pay a substantially greater portion than its fair share of the tax burden; and that defendant tax assessor’s actions violated plaintiff’s constitutional right to have uniformity in tax assessments and equal treatment with other property owners of Lee County.
Plaintiff prayed for a decree declaring and adjudicating the respective rights and duties of the plaintiff and defendants as concerned the 1963 tax assessment roll for Lee County and declare the discounts given by the tax assessor illegal and unconstitutional ; declare invalid the 1963 tax roll and require all property to be reassessed at true cash value; or in the alternative, set aside the 1963 assessment of $697,540.00 placed on plaintiff’s lands. Plaintiff also prayed in the alternative for an injunction requiring the tax assessor to reduce the assessment of plaintiff’s property to the same comparative value as other lands of a similar nature.
Following the answers of all the defendants, this cause was heard without a jury. At the conclusion of the rather lengthy *3 hearing, the chancellor entered his decree finding in essence that much of the land in Lee County was not assessed at fair market value or cash value; that defendant tax assessor had systematically, deliberately and intentionally underassessed over forty per cent of the real property of Lee County; that defendant tax assessor had failed to utilize established appraisal principles in arriving at these valuations; and that plaintiff had thus been forced to bear a disproportionate share of the tax burden of Lee County. The chancellor found, however, that plaintiff’s property had not been over-assessed, and plaintiff was therefore not entitled to have its assessment reduced. The chancellor stated that there was no method whereby he could remedy the past effects of this action without voiding the 1963 tax rolls, which he would not do. The chancellor’s decree enjoined defendant tax assessor from preparing the 1965 tax roll on the basis of the 1963 tax roll and ordered him to prepare his 1965 tax roll in accordance with the Florida Constitution, § 193.-021, Fla.Stats., F.S.A., and the standards set out in the cases of McNayr v. State ex rel. Dupont Plaza Center, Inc., 166 So.2d 142 (Fla.1964) ; Tyson v. Lanier, 156 So.2d 833 (Fla.1963) ; and Osborn v. Yeager, 155 So.2d 742 (D.C.A.Fla.1963).
Defendants assigned as error the sufficiency of the evidence to support the chancellor’s findings and to overcome the presumption of correctness of the 1963 tax roll as prepared by the assessor. Plaintiff’s cross-appeal questions the adequacy of the relief granted by the chancellor.
We believe that the confusion which has surrounded the method of assessing ad valorem taxes in Florida has been substantially reduced by the Supreme Court of Florida decision in Walter v. Schuler, 176 So.2d 81 (Fla.1965), wherein Justice Thomas, speaking for the court, set forth the method assessors should use conforming to the constitutional and statutory requirements regarding proper valuation and assessment. He said:
“ * * * It seems fitting, at the outset, to quote with emphasis the provisions of the Constitution on the subject for, after all, this is the criterion to which any decision in the present litigation must be anchored. The language is simple; the amount shall be ‘just valuation’ which for the immediate purpose we will call ‘X’. * * * The confusion we are about to attack grew out of attempts to apply a definition to ‘X’. The 1941 Act appears not to have been changed in any manner relevant to the prime point in this litigation, in respect to the figure on which taxes should be computed until the passage in 1963 of Chapter 63-250, and there in Sec. 1, now Sec. 193.021, it was provided that the assessors should assess ‘all the real and personal property in * * * such a manner as to secure a just valuation as required by § 1, Art. IX of the state constitution’ and that ‘[i]n arriving at a just valuation’ there should be taken into consideration seven factors: the present cash value of the property; its present use and the highest and best use to which it might be put in the near future; its location, size or quantity; the cost of the property and the present replacement value of improvements; the condition of the property; and the income it yields.” Walter v. Schuler, supra, at page 83.
The court went on to say that fair market value and just valuation were legally synonymous and as to the discretion a tax assessor may have in preparing the tax roll the court said:
“We agree with the chancellor’s view that Sec. 193.021 was not intended to give assessors an almost unbridled discretion in the performance of their duty to establish just valuation. Rather, we regard the Act as an attempt by the legislature to pin the assessor more firmly to the Constitutional mandate. The result of such a construction is not to deprive these officers completely of their discretion for there is bound to be some tolerance in the execution of their task *4 as they receive, weigh and evaluate varying information on the subject from different sources they consider reliable, but this opinion is designed to put at rest the procedure of setting assessable values at a percentage of ‘X’. It is apodictic that a percentage of ‘X’ cannot be computed without first establishing ‘X’ and the assessors upon reaching the first figure are enjoined not to proceed to the second.” Walter v. Schuler, supra, at page 85.
The record before us presents ample evidence to support the chancellor’s findings that property in Lee County was not being properly assessed, and we affirm his decree in that regard. However, since the 1965 tax roll has already been prepared, we remand the cause with instructions to the chancellor to restrain and enjoin defendant tax assessor from preparing the 1966 tax roll based upon the 1965 tax roll and to order the assessor to prepare the 1966 roll after reassessment of all the lands in Lee County using as a guide Art. IX Sec. 1, of the Florida Constitution, F.S.A., together with the Florida Statutes, specifically § 193.021, Fla.Stats., F.S.A. as construed in Walter v. Schuler, supra.
We likewise affirm the decree in all other respects except the portion wherein the chancellor denied plaintiff any past relief from the discriminatory practices regarding his property. We believe the chancellor was correct in refusing to set aside the entire tax roll. We are concerned, however, with the question of a denial of the equal protection of the law provided by the Fourteenth Amendment of the Federal Constitution which attorneys for the defendants so adroitly sidestepped but which we cannot here so treat.
It seems apparent from the record and the chancellor so found that defendant tax assessor’s conduct in the assessment of plaintiff’s property amounted to unjust discrimination against plaintiff, forcing it to pay a disproportionate share of the tax burden of Lee County. While plaintiff may have been assessed at one hundred per cent of just value, most, if not all, of the property of a similar nature was assessed at substantially less than that percentage. This pattern of discrimination seems to us to be clearly the type prohibited as a violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution. In Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 43 S. Ct. 190, 67 L.Ed. 340 (1923), petitioner had been assessed at one hundred per cent of its true value while all other real estate in the respondent county had been assessed at fifty-five per cent. The United States Supreme Court stated:
“ * * * This court holds that the right of the taxpayer whose property alone is taxed at 100 per cent, of its true value is to have his assessment reduced to the percentage of that value at which others are taxed even though this is a departure from the requirement of the statute. The conclusion is based on the principle that where it is impossible to secure both the standards of the true value, and the uniformity and equality required by law, the latter requirement is to be preferred as the just and ultimate purpose of the law. In substance and effect the decision of the Nebraska Supreme Court in this case upholds the violation of the Fourteenth Amendment to the injury of the Bridge Company.”
In Hillsborough Township Somerset County, N. J. v. Cromwell, 326 U.S. 620, 66 S. Ct. 445, 90 L.Ed. 358 (1946), the United States Supreme Court, in affirming a lower federal court decision, held that the constitutional requirement of equal treatment in the imposition of taxes is not satisfied if the state does not remove the discrimination but merely imposes upon him against whom the discrimination has been directed the burden of seeking an upward revision of the taxes of other members of the class. In view of these decisions, it *5 would appear that to deny plaintiff any relief in the way of reduction of its assessment or some other form would he to deny plaintiff equal protection of the law in violation of the Fourteenth Amendment.
We are not unmindful of the decisions in Cosen Inv. Co., Inc. v. Overstreet, 154 Fla. 416, 17 So.2d 788 (1944), and Sproul v. Royal Palm Yacht & Country Club, Inc., 143 So.2d 900 (D.C.A.Fla.1962), which appear to hold that a taxpayer is entitled to no such relief under the circumstances of this case unless his property was assessed in excess of full cash value. In those cases, however, the constitutional question of equal protection was not raised nor was there any claim of systematic, deliberate, and intentional undervaluation of other property on a countywide basis as was made in the instant case.
The portion of the decree denying plaintiff any affirmative relief is therefore reversed and the cause remanded for the purpose of determining the best way to afford plaintiff relief for the past discrimination. We point out that to do this it is not necessary to void the 1963 tax roll or the roll of any subsequent year. At least one acceptable method would be to allow plaintiff a credit against future taxes for the amount determined discriminatory for the. year 1963.
We strongly urge defendant tax assessor to proceed forthwith in complying with that part of the final decree requiring a reassessment of the property in Lee County and that this be done in accordance with the Florida Constitution, the Florida Statutes (giving particular attention to § 193.-021, Fla.Stats., F.S.A.), and the decision in Walter v. Schuler, supra, so that the 1966 tax roll will not be contaminated with the inequities of the 1963 roll.
Affirmed in part, reversed in part, and remanded with directions.
PIERCE, J., and FLYNN, ROGER D., Associate Judge, concur.