### CONBOY v. TAX ASSESSOR, et al.

Nos. 1623, 1901, 2125, 2395 and 2674.

Circuit Court, Collier County.

May 14 and July 17, 1968.

Robert M. Brake, Coral Gables, for plaintiffs.

Darrey A. Davis of Scott, McCarthy, Steel, Hector & Davis, Miami, for defendant, Port Royal, Inc.

B. Clarke Nichols of Carroll, Vega, Brown & Nichols, Naples, for defendant, Aqualane Shores, Inc.

David C. Spingler of Spingler & Allen, Naples, for defendants, City of Naples, the City Tax Assessor and Collector, and Moorings Development Co. of Canada, Ltd.

ARCHIE M. ODOM, Circuit Judge.

*Final judgment, May 14, 1968:* The five above numbered actions involving the same parties and common questions of law and fact have been duly consolidated. Such consolidated litigation came on regularly for trial, pursuant to pre-trial conference and pre-trial order, upon the issues made by plaintiffs' petition to enforce final decree and amendment thereto, certificate of compliance with final decree filed by the defendant tax assessor, and the complaint and answers filed in case numbered 2674. The court has heard the testimony, reviewed the evidentiary exhibits, and considered the various briefs submitted.

This litigation was instituted on August 16, 1962. A final decree was entered on September 4, 1964. On appeal, the final decree was affirmed by decision of the Supreme Court reported in City of Naples v. Conboy (Fla. 1965), 182 So.2d 412.

The previous decision in this case invalidated assessments of the lands involved herein for the reason that such assessments were made under guidelines and standard measures of value prescribed by municipal ordinances and contracts declared to be ultra vires and void. The taxing officials of the city of Naples erroneously utilized unauthorized and illegal criteria for the evaluation of said lands for municipal tax purposes. This invalidated the assessments. The final decree directed the taxing authorities of the city to reassess the lands involved. A complete reassessment of the lands was made upon the basis of a report and recommendations submitted by Hunnicutt & Associates, Inc., an appraisal company employed by the city. After equalization hearings on the substantially increased valuations arrived at under the reassessment program, additional municipal taxes on the subject lands were levied and collected.

This consolidated litigation now is before the court for supplemental adjudication of the question whether the revised assessed valuations of the lands accomplished under the reassessment program of the city of Naples conform to the requirements of law.

There is no uncertainty concerning the fundamental requirements of law governing ad valorem tax assessments. The controlling provisions of the Florida Constitution (article IX, sections 1 and 5) and the implementing statutory provisions have been construed and applied by the courts. The legislature is constitutionally mandated to provide for a uniform and equal rate of taxation and to prescribe such regulations as shall secure a just valuation of all property. The judicial decisions beginning in 1942, with Schleman v. Connecticut General Life Insurance Co., 151 Fla. 96, 9 So.2d 195, and followed more recently by the decisions in State ex rel. Glynn v. McNayr (Fla. 1961), 133 So.2d 312, and McNayr v. State ex rel. DuPont Plaza (Fla. 1964), 166 So.2d 142, indicate that ad valorem tax assessments shall be made uniformly and equally at just valuation or full value. The 1965 decision of the Supreme Court in Walter v. Schuler (Fla. 1965), 176 So.2d 81, reaffirms that assessments at less than 100 percent of just valuation are illegal, and clearly establishes the controlling principle that "just valuation" and "fair market value" are legally synonymous. The court held "fair market value" may be established by the classic formula that it is the amount a purchaser, willing but not obligated to buy, would pay to one willing but not obligated to sell.

The particular real property involved in this consolidated litigation consists of vacant, platted lands remaining unsold as individual lots in residential subdivisions owned and developed by the defendant subdividers named in the caption hereof. It is undisputed that such lands are squarely within the purview of the classification prescribed by §192.31 (2), Florida Statutes, wherein it is provided —

> ... That platted lands unsold as lots shall be valued for tax assessment purposes on the same basis as any unplatted acreage of similar character, until sixty per cent of such lands included in one plat shall have been sold as individual lots ...

This legislative directive requires that the remaining unsold lots included in a single platted subdivision shall be valued for tax assessment purposes on the same basis as unplatted acreage of similar character, until such time as sixty percent of all the lots have been sold. Such statutory guide indicates that unsold lots in a platted subdivision which are still owned by the subdivider (and offered for sale as individual lots) are to be valued for tax assessment purposes as a single parcel of land. The valuation of the whole group of unsold lots is to be made on the basis of unplatted acreage of similar character. The land consisting of unsold lots in a platted subdivision is assessed in the same manner as unplatted acreage of similar character. When the subdivider has sold sixty percent of all the lots in the platted subdivision this

method of assessment terminates.

In accord with the rationale of the decisions in Lanier v. Overstreet (Fla. 1965), 175 So.2d 521, and Markham v. Blount (Fla. 1965), 175 So.2d 526, and the application thereof in the cases of Matheson v. Elcook (3rd D.C.A. Fla. 1965), 173 So.2d 164, cert. denied, Elcook v. Matheson (Fla. 1966), 184 So.2d 889; Stiles v. Brown (1st D.C.A. Fla. 1965), 177 So.2d 672, cert. denied, Stiles v. Brown (Fla. 1966), 182 So2d 612; and Brown v. St. Joe Paper Company (1st D.C.A. Fla. 1965), 178 So.2d 606, cert. denied 184 So.2d 886, the pre-trial order entered without objection in this consolidated litigation determined that the provisions of §192.31 (2), Florida Statutes, are applicable and controlling in respect to the assessments of the unsold platted lands involved herein.

The plaintiff, Vincent H. Conboy, challenges the validity of the revised assessed valuations of said lands arrived at under the reassessment program, and urges that the court again direct the taxing authorities of the city of Naples to reassess the lands. The plaintiff alleges that, notwithstanding the final decree, the city taxing authorities intentionally, arbitrarily and systematically undervalued the lands by granting an unauthorized and illegal subdivider's discount. It is noteworthy that the plaintiff made the same attack on the Collier County assessments of the same classification of lands. See State ex rel. Conboy v. Colding (2nd D.C.A. Fla. 1967), 200 So.2d 246, certiorari denied 204 So.2d 331 (Fla. 1967), wherein the court held that —

> The granting of an illegal subdivider's discount to the owners of unsold, vacant, platted lands is the basis of appellant's third contention. It appears that the tax assessor applied the statutory classification and requirements of Sec. 192.31(2), Fla. Stats., in placing a value on unsold platted lots on the same basis of acreage of similar character. To have done otherwise would have been contrary to Sec. 192.31(2), Fla. Stats., and mandamus will not be granted to compel the performance of an illegal act. State ex rel. Glynn v. McNayr, supra.

In Lanier v. Overstreet (Fla. 1965), 175 So.2d 521, the Supreme Court, in holding that §193.11 (3) is a valid legislative classification designed to secure a just valuation of agricultural lands, said that —

> Another legislative directive providing a practical guide to tax assessors to assure that the land will be assessed in accordance with its actual character during the tax year is found in Section 192.31(2), Fla. Stat., requiring platted lands to be assessed on the same basis as unplatted lands until 60 percent of the land in one plat have been sold as individual lots.

The Florida Tax Assessor's Guide, authorized by §192.31, Florida Statutes, and approved by the Florida Budget Commission, at page 93 (d), provides —

SUBDIVISION LOTS. Section 192.31, Florida Statutes, provides that platted lands, unsold as lots shall be valued for tax assessment purposes on the same basis as unplatted acreage of similar character, until sixty per cent of such lands included in one plat shall have been sold as individual lots. This does not apply, however, to lots in the same subdivision which have been sold to individuals. These should be valued as platted lands and carried on the rolls as individual lots for assessment purposes. O.A.G. 056-190, 7-2-56.

The jurisdiction of the court in ad valorem tax matters is delineated by the provisions of article V, §6 (3), Florida Constitution, and §196.01, Florida Statutes. The scope of judicial inquiry is the legality of the tax or assessment. In the absence of a showing of illegality, the court is not justified in striking down tax assessments made by the appropriate tax officials, or substituting judicial judgment for the administrative judgment of the tax officials. It is not the function of the court to supervise the making of tax assessments, or to resolve differences of opinion as to the precise sums at which taxable property should be assessed. Mere errors in judgment made in good faith do not constitute a sufficient basis for judicial intervention. The acts of tax officials are clothed with a presumption of bona fides and correctness. To overcome the presumption, there must be evidence of an intentional, systematic or planned deviation from proper assessing methods, techniques and procedures without regard to actual values, or evidence of some unlawful act on the part of the tax officials. Walfield, Inc. v. Sproul (1966), 26 Fla. Supp. 193. As stated by the court in Harbond, Inc. v. Anderson (2nd D.C.A. Fla. 1961), 134 So.2d 816 —

> ... the making of valuations upon property for tax purposes is an administrative act involving exercise of administrative discretion; and the good faith of tax officers and their official actions is presumed. When made by proper officers, the prima facie correctness of an assessment, to be overcome, must be affirmatively assailed by appropriate and sufficient allegations and proofs, to the exclusion of every reasonable hypothesis of legal assessment. (cases cited) Tax assessors are necessarily accorded a wide discretion in valuation of property for taxation purposes, and conflicting views frequently arise in the common effort to arrive at such a valuation. Courts will not ordinarily disturb an assessment made by a tax assessor or control his reasonable discretion in making an evaluation of property for assessment purposes. (cases cited)

On the second trial of this case the plaintiff has wholly failed to prove there was an intentional, arbitrary and systematic undervaluation of said lands by the city taxing authorities. On the contrary, the court finds that the revised assessed valuations accomplished under the reassessment program were made at just valuation, in that such assessed valuations either equal or exceed the fair market value of the lands involved. For example, the fair market value of the lands owned by the defendant, Port Royal, Inc., on January 1, 1966, did not exceed the sum of $1,491,000, as estab-

lished by a preponderance of the evidence, while the 1966 reassessment valuation thereof made by the city taxing authorities was 112 percent of fair market value.

The city of Naples, pursuant to the final decree of this court and the mandate of the Supreme Court, proceeded in good faith to make a reassessment of the lands involved. The city was under a legal duty to assess uniformly and equally at just valuation, in the manner prescribed by law. Acting on the advice and recommendations of Hunnicutt & Associates, Inc., the city assessed the unsold platted lands owned by the defendant subdividers on the basis of the evaluation guidelines prescribed by §192.31 (2), Florida Statutes. It is undisputed that the assessments of all lands were made uniformly and equally. The fundamental issue simply is whether or not the lands involved were assessed at just valuation or fair market value.

The plaintiff initially objected to the assessments on the ground that the method of assessment utilized by the city unlawfully granted a "subdivider's discount", and that the assessed valuations represented only a percentage of the true value of the lands involved. Plaintiff asserted that the unsold platted lands should be assessed, not on the basis of unplatted acreage of similar character, but at substantially the same amount as the sales prices received for lots sold to individual purchasers. This, of course, is contrary to the legislative directive embodied in §192.31 (2).

The plaintiff now contends that §192.31 (2) is not applicable to the unsold platted lands involved herein and the city of Naples is not authorized to make assessments in accordance with such statutory requirements, because the provisions of the charter of Naples governing tax assessments supersede the general law, and the charter provides that —

> ...Assessments shall be on a basis not in excess of fair cash value. The term 'fair cash value' is defined to mean the price at which the property would sell if voluntarily offered for sale by the owner thereof upon such terms as like property is usually sold, not at the price which might be realized if sold at a forced sale.

The plaintiff further claims that in some instances more than sixty percent of the lots included in certain sections or segments of the various platted subdivisions have been sold; and that, therefore, the assessments made under and pursuant to the provision of §192.31 (2) are wholly invalid. Finally, plaintiff contends that the pertinent provisions of §192.31 (2) are void and unconstitutional.

The court is inclined to the view that the contentions made by plaintiff are without merit. However, by reason of the evidence presented at the trial of this consolidated litigation it becomes unnecessary to render an opinion or to decide these questions in

arriving at a proper decision in this case. This is so, because the evidence shows that, irrespective of the manner or method in which such assessments were made, and regardless of whether the provisions of §192.31 (2) are applicable or inapplicable, the lands owned by the defendant subdividers have been valued for tax assessment purposes to the full extent of their fair market value, as established by recognized and accepted appraisal methods, techniques and procedures employed by competent and qualified real estate appraisers to ascertain the fair market value of property of the nature and character here involved, without consideration of the provisions of §192.31 (2).

At the trial, the defendant property owners produced qualified and experienced real estate appraisers, who had made formal written appraisals of the lands involved herein, and who testified as to the fair market value of such lands and submitted documentary evidence in support of their estimates of fair market value.

In rebuttal, the plaintiff offered the testimony of a qualified real estate appraiser, as well as his own opinion concerning fair market value. The expert witness called by plaintiff stated that he adopted and used all the data and figures compiled by defendants' first appraisal witness, except the period of time required to sell the remaining subdivision lots. The process by which plaintiff arrived at his estimate of fair market value has been specifically condemned by the appellate court in McNayr v. Claughton (3rd D.C.A. Fla. 1967), 198 So.2d 366.

While the real estate appraisers on each side were not in agreement as to the sum constituting fair market value, there was no disagreement concerning the proper method of appraisal or appraisal approach utilized for arriving at the fair market value of the particular type of property here involved. All were in accord that the income or economic approach constitutes the most sound and reliable method to ascertain the fair market value of income producing property of the nature and character here under consideration. The defendants' appraisers also utilized the market data or comparable sales approach as a guide to determine fair market value. The defendants' first appraisal witness also took into consideration the factors enumerated in §193.021, Florida Statutes.

In City of Tampa v. Colgan, 121 Fla. 218, 163 So. 577 (cited with approval in Walter v. Schuler, suppra), the Supreme Court declared that —

> By "fair market value" is meant the amount of money which a purchaser willing but not obligated to buy the property would pay to an owner willing but not obligated to sell it, taking into consideration all uses to which the property is adapted and might in reason be applied. (cases cited) Prospective value alone cannot be made the substantive

basis of an assessment, but can be considered to the extent that it enters into, or is reflected in, present value . . .

And in McNayr v. Claughton (3rd D.C.A. Fla. 1967), 198 So.2d 366, the court held that —

> The terms "just valuation", "full cash value" and "fair market value" are legally synonymous. Tyson v. Lanier, Fla. 1963, 156 So.2d 833; Peters v. Hansen, Fla. App. 1963, 157 So.2d 103. To determine the fair market value there are three well recognized guides to appraisal: (1) the cost approach; (2) the comparable sales and (3) the income or economic approach. City of Tampa v. Colgan, 1935, 121 Fla. 218, 163 So. 577, 582. It is apparent that the chancellor selected the income or economic approach as the method for determining fair market value in this case . . .

The Florida Tax Assessor's Guide on Real Estate (September 5, 1967), §2.3, pages 28-38, approves and specifies the "Income Approach to Value" for making assessments of real estate used for income producing purposes.

§193.021, Florida Statutes, requires that, in arriving at a just valuation of taxable property, the tax assessors shall take into consideration certain specified factors, among which is "the income from said property."

The income approach to real estate valuation is a method of estimating value, based on factual data with respect to the income yield of the property. This method is also known as the capitalization approach, because the income derived from the property, generally net annual income, is reduced to an indication of value by a mathematical process or computation known as capitalization, and the income approach to value is a method of measuring the present worth of the benefits to be reaped from the property in the future. Hunter v. Tax Assessor (1966), 27 Fla. Supp. 148. The income or capitalization approach simply is an appraisal technique in which the anticipated net income is processed to indicate the value of the property which produces the income. It is a value estimate derived from considering the relationship of the return a property will probably earn with the price for which it will probably sell. Theoretically, and many times practically, it is a very sound approach to value. As long as people buy and sell income producing real estate, appraisers following the market will consider it to be entirely economically sound. The evaluation of income property necessarily requires consideration of its return as a factor indicating the present worth or value of such property. This recognized method of appraisal provides a sound technique for ascertaining the fair market value of the subject property, because it involves the factors which most accurately indicate the amount a purchaser, willing but not obligated to buy, would pay to one willing but not obligated to sell. It is apparent that a pro-

spective purchaser would investigate and would be vitally interested in the anticipated income yield of the property, as the sole means of recapturing the purchase price and a return on his capital investment. The value of the property arrived at on economic or income approach would tend to reflect the purchase price which a purchaser willing but not obligated to buy probably would pay to an owner willing but not obligated to sell. Admittedly, the cost approach is not applicable in this instance. The market data or comparable sales approach was utilized as a guide by defendants' appraisal witnesses, but not by plaintiffs. The evidence of defendants' expert appraisal witnesses appeared more reasonable, logical and convincing. Accordingly, the court finds for the defendants and against the plaintiffs on the issue of the fair market value of the property involved herein.

On the basis of all the evidence, the court finds that the lands owned by the defendant subdividers named in the caption of this final judgment have been assessed for the tax years 1962 through 1966, both inclusive, uniformly and equally at just valuation or fair market value. Any increased evaluations of such lands in excess of the existing assessed values would cause the defendant subdividers to bear a disproportionate share of the burden of taxation in relation to other real property. Such a situation would violate the constitutional guaranty of equal protection and equal treatment in the imposition of taxes. In Schooley v. Sunset Realty Corp. (2nd D.C.A. Fla. 1966), 185 So.2d 1, the court cited the Supreme Court of the United States in stating this rule of law, as follows —

> This court holds that the right of the taxpayer whose property alone is taxed at 100 per cent. of its true value is to have his assessment reduced to the percentage of that value at which others are taxed even though this is a departure from the requirement of the statute. The conclusion is based on the principle that where it is impossible to secure both the standards of the true value, and the uniformity and equality required by law, the latter requirement is to be preferred as the just and ultimate purpose of the law . . .

Accordingly, it is ordered and adjudged as follows — (1) That this consolidated litigation, and each of the above numbered cases, be and the same are hereby dismissed with prejudice, and that the plaintiffs take nothing by this action and that the defendants go hence without day. (2) That the defendants do have and recover of and from the plaintiff, Vincent H. Conboy, all their costs incurred in this consolidated litigation after the date of the filing of the mandate of the Supreme Court of Florida herein, which costs shall be taxed pursuant to motion and notice, and for which costs, when fixed and taxed, let execution issue. (3) That the comptroller of the state of Florida is dismissed as a party defendant to this

consolidated litigation in the same manner as though he had never been named as a party.

*Cost judgment, July 17, 1968:* The final judgment rendered on May 14, 1968, in this consolidated cause provides that the defendants have and recover of and from the plaintiff, Vincent H. Conboy, their costs incurred herein after the date of filing of the mandate of the Supreme Court of Florida. It is further provided that such costs shall be taxed pursuant to motion and notice.

This consolidated cause came on to be heard, after due notice, upon the motion of the defendant, Port Royal, Inc., to tax costs in accordance with the provisions of the final judgment. The court has heard the testimony and evidence, and has considered the affidavit heretofore filed and served, and the court has had the benefit of arguments of counsel.

The costs under consideration consist of the compensation paid for appraisal services performed by a qualified and experienced M. A. I. appraiser on behalf of the defendant, Port Royal, Inc. This independent real estate appraiser and valuation consultant was engaged to make an appraisal for the purpose of determining the fair market value of the vacant, platted lands remaining unsold as individual lots in the residential subdivision, known as Port Royal, owned by Port Royal, Inc. and involved in this consolidated litigation. The professional services rendered in connection with this consolidated cause included inspections and compilation of data, conferences and studies of the data, preparation of a written comprehensive appraisal report, and preparation and attendance at trial as an expert witness. At the trial, this appraiser duly qualified as an expert witness on the valuation of real estate, and testified on direct and cross-examination. His appraisal report was admitted into evidence. It appears that fourteen full days were devoted to the performance of such professional appraisal services. The sum of $3,500 was charged for the services rendered, which sum has been fully paid by Port Royal, Inc. Said defendant engaged a real estate appraiser upon the advice of counsel.

The court finds that, by reason of the nature and character of this litigation and the issues involved, the utilization of the services of a qualified and experienced real estate appraiser and valuation expert was necessary and reasonably required for the proper defense of the multiple claims asserted by plaintiff. The record reflects that the charges made for such professional services are commensurate with those usually and customarily made by qualified and experienced real estate appraisers for similar services, and that the sum of $3,500 is fair and reasonable compensation for the services rendered in this litigation.

The state law requires that all property subject to taxation shall be assessed at just valuation, which is legally synonymous with fair market value, which is the amount a purchaser willing but not obligated to buy, would pay to one willing but not obligated to sell. Walter v. Schuler (Fla. 1965), 176 So.2d 81. The principles governing the ascertainment of value for the purpose of taxation are the same as those that control in condemnation cases, which involve the ascertainment of just compensation. Great Northern Railway Company v. Weeks, 56 S. Ct. 426, 297 U.S. 135, 80 L. Ed. 532.

In condemnation proceedings the allowance of fees of expert real estate appraisal witnesses for the defendant is a matter for the trial judge to decide in the exercise of sound judicial discretion. Dade County v. Brigham (Fla. 1950), 47 So.2d 602; Orange State Oil Company v. Jacksonville Expressway Authority (App. 1962), 143 So.2d 892. In condemnation cases, expert appraisal witnesses usually are allowed compensation on the basis of what is fair and reasonable under all the circumstances, commensurate with the time required, the novelty and difficulty of the questions involved, the skill and experience requisite to properly perform the assignment, and the charges customarily made by qualified real estate appraisers for similar services. It would appear that the same criteria are applicable to tax assessment suits. It was the bringing of this litigation that precipitated the controversy which made necessary the utilization of the services of an expert real estate appraiser for the ascertainment of the fair market value of the property involved. Where a property owner is compelled to prove the fair market value of his property for tax assessment purposes, it is reasonable for the property owner to meet this obligation by means of qualified expert testimony. If the property owner prevails, he should be entitled to have the reasonable compensation paid this necessary expert witness taxed as costs of the suit, upon purely equitable considerations.

By the enactment of §90.231, Florida Statutes, the legislature determined as a matter of policy that an expert witness testifying in any cause shall be allowed a witness fee including the cost of any exhibits used by such witness (in this instance an appraisal report) in the amount of ten dollars per hour or such amount as the trial judge may deem reasonable, and that the same shall be taxed as costs.

The Supreme Court has held that reasonable expenses incurred in the production of evidence and exhibits such as photographs, surveys, diagrams and necessary tests and experiments used in the trial may be taxed as costs. Loftin v. Anderson (Fla. 1953), 66 So.2d 470. A part of the charges made by defendant's expert

witness was attributable to the preparation of an appraisal report used at the trial and admitted in evidence.

The plaintiff argues that it would be inequitable to tax any costs against an individual bringing a taxpayers' class action. The general rule appears to be to the effect that one suing in a representative capacity for the benefit of himself and others may properly be taxed with costs where final judgment is against him. 20 C.J.S., Costs, §116, page 358; Gilmour v. North Pasadena Land & Water Co., 178 Cal. 6, 171 P. 1066; Richardson v. Cortner (Miss. 1958), 105 So.2d 456.

The amount of fees for expert witnesses called to testify and their allowance as costs are matters addressed to the discretion of the court. Normally, the allowance of an expert witness fee should be determined by the amount of time the witness is required to be in attendance at court. Common sense dictates that in the allowance of an expert witness fee the court should include consideration of the time, efforts and expertise devoted by the witness to preparation and attendance. Experience indicates charges made by an expert witness to the litigant utilizing his services, even though such charges are usual for the expert witness, may not necessarily be the basis of taxable costs unless deemed reasonable by the court. Florida Civil Trial Practice Manual, §21.9, page 404.

It is thereupon ordered and adjudged that said motion to tax costs is hereby granted, and that the defendant, Port Royal, Inc., a Florida corporation, do have and recover of and from the plaintiff, Vincent H. Conboy, the sum of $3,500 as costs, for which sum let execution issue.