133 So.2d 312 (1961)
STATE of Florida ex rel. Jay G. GLYNN and Betty Glynn, his wife, as taxpayers of Dade County, Florida, and all other taxpayers similarly situated, Appellants,
v.
Irving G. McNAYR, as County Manager of Dade County, Florida, charged with the duties of the Tax Assessor of Dade County, Florida, and Thomas A. O'Connor, as the Chief Deputy Tax Assessor of Dade County, Florida, Appellees.
No. 31048.
Supreme Court of Florida.
September 29, 1961.
*313 Sibley, Grusmark, Giblin, King & Levenson, Miami Beach, for appellants.
Darrey A. Davis, Miami Beach, for appellees.
THORNAL, Justice.
Appellants Glynn, who were relators in a mandamus proceeding in the circuit court, seek reversal of a final judgment which quashed the alternative writ and dismissed the petition.
Our jurisdiction derives from that provision in the Constitution which authorizes a direct appeal to this Court from a final judgment by which a trial court construes a controlling provision of the Constitution. Section 4, Article V, Florida Constitution, F.S.A.
By Section 8.01 of the Dade County Home Rule Charter the office of county tax assessor was abolished. The powers and functions of the office were transferred to the county manager. By the same section the county manager was authorized to delegate these powers and functions to a suitable person of his selection. The tax assessor of Dade County is no longer a constitutional officer. Section 6, Article VIII, Florida Constitution, F.S.A. Nevertheless, by the Home Rule Charter he is endowed with the same constitutional and statutory powers as are exercised by the tax assessors of other counties.
When this litigation was instituted Section 9.03, of the Dade County Charter contained the following provisions, among others, to wit:
"(A) On or before May 1, 1958, the Board of County Commissioners shall provide for the reassessment according to law of all real and tangible personal property within the incorporated and unincorporated areas of the county exclusive of property assessed by the state. The cost of this reassessment shall be paid out of the general funds of the county or any other funds that might be available. The reassessment shall be completed as expeditiously as possible but in no event later than January 1, 1961.
"(B) After this reassessment has been completed and made official by the Board, county tax rolls reflecting this reassessment shall be completed and promptly made available to each municipality. Beginning with the 1961 tax year, no other real and tangible personal property tax rolls than those prepared by the county shall be legal or in any manner used for the assessment of taxes within the incorporated *314 and unincorporated areas, except as provided in 9.03(D)."
Pending this litigation these Charter provisions were repealed by popular referendum.
On March 17, 1960, the county commissioners employed a board of appraisers to reassess all of the real and tangible personal property as authorized by the foregoing charter provisions. The deadline for the compilation of the reassessment program was set for January 1, 1961. There is some dispute as to whether the reassessment of the real estate was actually completed. However, on February 15, 1961, the new tax roll as prepared by the reassessment board was opened for public inspection by the tax assessor. There followed a storm of objections by taxpayers. This apparently resulted from the fact that the reassessment program resulted in a tremendous increase in property valuations in Dade County. Prior to 1961, the total real estate valuation for tax purposes was slightly under two billion dollars. The reassessment board set the 1961 values at a total in excess of four billion dollars. On May 16, 1961, appellee McNayr who had been appointed county manager on May 1, 1961, arbitrarily reduced all of the new valuations by a flat 20%. Thereafter, between May 16 and May 30, postcards were mailed to the owners of each of the 318,000 parcels of land in Dade County. The cards revealed the 1960 assessed valuation and the new 1961 valuation fixed by the appraisal board. This produced an even greater furor than did the opening of the roll in February. The County Manager, McNayr, testified that he received in excess of 200,000 complaints from the aroused taxpayers. The resultant pressure led the county commissioners to adopt a resolution which provided in part as follows:
"The County Tax Assessor is hereby authorized and directed to make up the 1961 County tax assessment rolls upon substantially the same basis as the 1960 County tax assessment rolls, without regard to the reassessment valuations, subject to approval by the voters of Dade County at the special election herein called for the purpose of submitting a proposed charter amendment." (Emphasis added)
The appellee O'Connor construed this resolution as a directive to return to the valuations as reflected by the 1960 tax roll which were thereafter revised merely to reflect new buildings or additions to existing construction on approximately thirty thousand parcels.
On July 12, 1961, the appellants instituted this mandamus proceeding against the county manager and his appointed tax assessor. By the petition it was alleged that the valuations on the 1960 tax roll were grossly inadequate, with the result that homesteads were thereby given preferential tax treatment over other types of real estate. This conclusion was grounded on the proposition that when real estate is assessed at anything less than full cash value, then the constitutional provision which exempts homesteads up to five thousand dollars of valuation, results in an inequality in favor of the homestead owner. Cosen Inv. Co. v. Overstreet, 154 Fla. 416, 17 So.2d 788. For example, contend the appellants, if property is assessed at fifty percent of full cash value, then a ten thousand dollar homestead would be assessed at five thousand dollars. The result would be that such a parcel would bear no part of the tax burden and would enjoy the equivalent of a ten thousand dollar exemption. The petition prayed for issuance of an alternative writ of mandamus "directed to the respondents requiring them to forthwith or within a reasonable * * period of time, submit to the county commissioners of Dade County, Florida the tax roll predicated upon the reassessment of all the real and personal property in Dade County, at full cash value, * * *" By the briefs and the oral arguments before this Court, petitioners contend for the issuance of a writ of mandamus which would compel the appellee respondents to file a tax roll based upon the 1961 reassessment *315 program which they assert was a "full cash value" appraisal.
Before the lower court and here, the respondents defended on the ground that the 1961 reappraisal was itself illegal, inequitable, unfair and unjust. They assert that while the total valuation reflected by the reassessment might be reasonably accurate, there were great discrepancies and inequalities in the valuations of individual parcels. They claimed that there was no uniformity in the reappraisal and that values fluctuated all the way from forty percent to one hundred twenty-five percent of full cash value. Respondents also pointed out that there had never been a reappraisal of tangible personal property for the 1961 roll. By way of additional defense, the respondents alleged and testified that it would be physically impossible to complete a new roll, audit it for errors, submit it for equalization and hold equalization hearings within the time required to present the roll to the tax collector for the preparation of the tax bills in October. They stated that it would require approximately five months to prepare a new roll based upon the 1961 reassessment program.
In the resolution by which the county commissioners directed the tax assessor to revert to the 1960 roll as a base for the 1961 tax roll, it was also provided that a special election would be held on August 15, 1961. At this election the electors of Dade County would be given an opportunity to express themselves on the following question, to wit:
"Shall the home rule charter of government for Dade County be amended, revised and modified by repealing Sections 9.03(A) and 9.03(B) relating to the reassessment of all real and tangible personal property in Dade County?"
An affirmative answer by a majority of the electors would eliminate from the home rule charter those provisions of Section 9.03 which we have quoted above. The election was held August 15, 1961, and we judicially know from the records in the office of the Secretary of State that the cited provisions of the charter were eliminated therefrom by a vote of 115,026 to 11,927. Misc. Record Book 3, page 22, Office of the Secretary of State. The result of this referendum does not control the disposition of the instant case. However, it would tend to refute the claims of the appellants that the taxing officials have acted arbitrarily and capriciously in the preparation of the current tax roll based upon the roll of a previous year. Incidentally, the record reveals that the current roll was prepared by the assessor pursuant to the resolution and was submitted to the county commissioners for equalization in July. Equalization hearings have been completed.
The trial judge heard all of the testimony. He concluded that the so-called reassessment for the 1961 tax roll was totally unfair and inequitable and, therefore, illegal. He expressed surprise that there were not more than 200,000 complaints. He concluded that although little could be said in favor of the 1960 tax roll, nevertheless in view of the nature of mandamus he could not direct the respondents to adopt a specific tax roll, which the record in his view clearly established as illegal. The trial judge also concluded that it would be physically impossible for the taxing officials to meet the commands of the alternative writ during the current tax year and that this would result in a disastrous shortage of income for the public schools, the Flood Control District and the general county government. For the reasons summarized, the trial judge discharged the alternative writ and dismissed the petition. It is this judgment which we are now requested to reverse.
As did the trial judge we deem it essential that we recognize at the outset the nature of mandamus. The case was disposed of at the trial level and will be disposed of by us within the narrow confines of the established restrictions on mandamus *316 as a remedy to compel official action. The purpose of the remedy is not to establish a legal right. Its function is to enforce a right which has already been clearly established. In other words, the petitioners must demonstrate their entitlement to a clear legal right to compel the performance of an indisputable legal duty. State ex rel. Eichenbaum v. Cochran, Fla., 114 So.2d 797; Curtis v. City of Miami Beach, Fla., 46 So.2d 24; 21 Fla.Jur., Mandamus, Section 4, page 316. When reduced to its simplest terms, the conclusion reached by the trial judge merely was that the petitioners had not demonstrated that they had a legal right to compel the preparation and submission of a particular tax roll which the record revealed was itself invalid. The trial judge merely held that the respondent taxing officials were not subject to any legal duty to prepare and submit a particular tax roll which was illegal.
Section 1, Article IX, Florida Constitution, F.S.A., requires the Legislature to "provide for a uniform and equal rate of taxation." Section 5, Article IX, Florida Constitution, F.S.A., provides that the "Legislature shall authorize the several counties * * * to assess and impose taxes for county * * * purposes * * and all property shall be taxed upon the principles established for State taxation." Reading Sections 1 and 5, Article IX, supra, together, the trial judge concluded that the Legislature was empowered to authorize counties uniformly and equally to impose taxes on all non-exempt property. He further decided that even though ad valorem taxes are no longer levied by the State, it is still necessary to refer to Section 5, Article IX, supra, to ascertain the "principles" governing the imposition of county taxes. By Section 1, Article IX, supra, the Legislature was directed to "prescribe such regulations as shall secure a just valuation of all property * * *." Section 193.11, Florida Statutes, F.S.A., requires the county assessor of taxes to assess all property "at its full cash value." By his opinion the trial judge concluded that the constitutional mandate of "a just valuation of all property" has been implemented by the legislative requirement of "full cash value." Although the county manager, under the Dade County Home Rule Charter is endowed with all of the powers and functions of a "county assessor of taxes" provided for in Section 6, Article VIII, Florida Constitution, F.S.A., as well as implementing general statutes, the fact remains that in Dade County the tax assessor is no longer a constitutional officer as such. However, despite the fact that his political life and death depend upon the county commissioners, so long as he is in office he is subject to the same responsibility and may exercise the same powers and discretion as are accorded to constitutional tax assessors.
In this regard, it has been held that so-called "full cash value" does not lend itself to absolute certainty. In applying the requirement this Court has recognized that the local tax assessor must necessarily be accorded a reasonable leeway in the exercise of judgment as to valuations. It has been held that the judgment of the tax assessor will not be disturbed unless it can be demonstrated that he has acted arbitrarily and capriciously. State ex rel. Kent Corp. v. Board of County Commissioners of Broward County et al., 160 Fla. 900, 37 So.2d 252; Schleman et al. v. Connecticut General Life Insurance Co., 151 Fla. 96, 9 So.2d 197. The just valuation mandated by the Constitution and extended to the legislative requirement of "full cash value" imposes the responsibility on the taxing official to value and apply the rule to each individual parcel of land. In other words, the mere fact that the aggregate total valuation of a tax roll reflects the full cash value of all property in the county, does not necessarily lead to the conclusion that the roll is equal and that just valuations have been obtained for each separate parcel.
Recognizing that the respondents are endowed with the constitutional and statutory duties of county assessors of *317 taxes provided for in the Constitution itself, we agree with the trial judge when he held that the acceptance of the report of the reappraisal board was not obligatory upon the tax assessor. It is not exactly clear whether the county commissioners contracted for the reassessment under Section 9.03 of the Dade County Charter, or under Section 193.111, Florida Statutes, F.S.A. In either event, the report of the reappraisal board was not binding on the tax assessor although it could properly be used by him as a guide.
The trial judge specifically found, with evidentiary support, that the reassessment program had produced valuations which were so patently defective and inaccurate as to violate the constitutional requirements of uniformity of rate of taxation and just valuation for such purposes. The respondents testified to a good faith belief that the reassessments were clearly defective and unsound, and for this reason they declined to adopt them as the basis for the 1961 tax roll. When the record is reviewed in this posture the conclusion reached by the trial judge was inescapable. Mandamus will simply not be granted to compel the performance of an illegal act, or one which is not within the category of a clear legal duty to be performed by the respondent public official.
We think also that within the area of discretion available to him in a mandamus proceeding, the trial judge properly denied the peremptory writ on the ground that the command of the requested writ, even if valid, would have been physically impossible of performance in time to produce the necessary tax income needed by the governmental agencies of Dade County during the current year. In other words, even if the remedy requested by the appellants could have been granted it would have disastrously affected the operations of the government, including the school system, because of the time that would have been required and the resultant delay in obtaining essential income.
In arriving at the conclusion which we reach, we take note of the assurances of the respondent taxing officials to the effect that they contemplate immediately entering a program to achieve what they describe as a fair and just tax roll based upon full cash value. They state that this will be accomplished not later than the 1963 roll. They give some indication that the work might be completed in time for the 1962 tax roll. While this contemplated program which is mentioned in the return, the testimony and in the briefs is not a determinative element in the decision which we reach, it does nevertheless indicate the good faith approach of the respondent officials in their effort to comply with the requirements of the Constitution and applicable statutes. It further evidences an absence of caprice in their action here under attack.
We do not overlook the concession by the respondents to the effect that the 1961 tax roll which finally evolved is not, in their judgment, a satisfactory roll. Nothing in this opinion is to be construed as approving such 1961 tax roll or in any way passing upon its validity. The validity of the current 1961 tax roll which has been prepared by the respondents is not the controlling element in our ultimate judgment. A decision on this point would have to await an appropriate attack. The holding of the trial judge and the conclusion which we reach simply is that the relators have requested the issuance of a writ of mandamus to compel the respondents to perform an act which this record reveals would be invalid if done. Such is not the function of the judicial process and would be particularly beyond the realm of accomplishment by a writ of mandamus.
The judgment discharging the alternative writ and dismissing the petition is affirmed.
It is so ordered.
ROBERTS, C.J., and TERRELL, THOMAS, HOBSON, DREW and O'CONNELL, JJ., concur.