ERVIN, Justice
(dissenting):
I do not believe the decree of the Circuit Court of Bay County should be disturbed.
The basis for equitable relief sought by Appellants appears to be as follows:
1. That when they and other qualified electors voted for 10 mills in the biennial school district election of Bay County on November 3, 1965 pursuant to Section 10, Article XII, State Constitution, as implemented by F.S. Sections 236.31, 236.32 and 236.33, F.S.A., to apply during the succeeding two county school fiscal years (July 1, 1966 to June 30, 1967 and July 1, 1967 to June 30, 1968), the 1965 assessed valuation of taxable property in the district, due to systematic undervaluation by the County Tax Assessor, was $61,000,000.
2. That at the time of said 1965 election the existing budget for the school district for the fiscal year 1965-1966 approved by the Bay County School Board was $579,000. This budget had reference to the millage voted in the preceding school district biennial millage election held in November, 1963.
3. That in 1966, pursuant to the provisions of Ch. 237, F.S., a district budget in the amount of $590,803 was approved by the county school board for 1966-1967. That the 10 mills voted in 1965 was expected to produce the revenue needed for said budget based upon the assessed valuation of the taxable property of the district for 1966 in the amount of $65,586,000. This budget and assessed valuation were unknown to the district electors when they voted in 1965.
4. That a budget to provide for the district current school fund for the year 1967-1968 was adopted by the local school board in 1967 in the amount of $912,000 to be raised from a 3-mill levy upon the assessed valuation of the taxable property of the district for the year 1967 in the amount of approximately $320,000,000. The latter amount is now the assessed value of the taxable property of the district because beginning in 1967 such property is no longer systematically undervalued, but is assessed at just, or full value in the range of one hundred per cent. The 10 mills were reduced to 3 mills pursuant to the local board’s authority to do so under F.S. Section 236.- *203 33, F.S.A., in order not to raise appreciably more revenue than the budget of $912,000.
5. That Appellants do not contend the budget of $912,000 is not needed for the district current school fund; instead, they contend that when the qualified electors owning taxable property in the district voted for 10 mills in the millage election of 1965 they believed the school district budgets for the next two fiscal years would closely approximate the budget for 1965-1966 because they did not anticipate the systematically undervalued taxable property of the district would be raised in valuation from less than 50% of its fair market value to approximately 100%, and consequently the 10 mills they voted on their undervalued taxable property would produce approximately the same budget amounts during the fiscal years of the biennium as was realized in the fiscal year 1965-1966. Under this alleged expectation their taxes, of course, would not be raised nearly enough to produce anything like the $912,000 estimated for the current budget. Their alleged expectation was realized in the next succeeding budget for the fiscal year 1966-1967, but in the fiscal year 1967-1968, valuation of the taxable property in the district had been increased in the range of 100% fair market value. This increase in valuation materially increased the amount of tax revenue a mill would produce. Therefore, Appellants, on the basis of equity, contend in their complaint to enjoin the school board that the board should not be permitted to budget $912,000 for the district nor levy 3 mills to produce it, because such official action was not contemplated by the electors when they voted in 1965 due to the undervaluation of district taxable property at that time. They point out $912,000 is more than one third greater than either of the two preceding budgets.
The Circuit Court disagreed with Appellants and denied them an injunction. We have jurisdiction of this appeal because an initial construction of controlling provision of the State Constitution is involved.
I find no justification for equitable relief for the following reasons:
A. The budget of a school district, i. e., a county, is not a static determination but varies from school year to school year. The Bay County district electors had no sound reason to believe whep they voted in 1965 that from the standpoint of school needs the district budget would necessarily remain in the range of the 1965-1966 budget of $579,000 during the succeeding two fiscal years but, rather, in a county growing as fast as Bay the school needs by 1968 in all likelihood would greatly increase. The record fully demonstrates that Bay County requires this district budget amount of $912,000. Along with most of the fast-growing counties of the state, Bay County is experiencing a grave financial crisis in its public school system.
B. Under the present emergency conditions it appears incongruous that equity would purport to enjoin a duly determined ad valorem tax levied to meet the district current school needs of Bay County seasonably budgeted in the amount of $912,000 and thereby override the wisdom and discretion exercised by the elected school officials of the county which have been duly examined and approved by the Circuit Judge of the County. We should not substitute our judgment for that of the school budget-making authority of Bay County by holding that $912,000 is not what the local taxpayers gave their consent could be provided for district school needs from local taxation. The question immediately arises if $912,000 was not authorized by the electors, what figure was authorized? Was it the $579,000 budget figure of 1965-1966 or some small percentage over such figure based on our guess as to what exactly the district electors had in mind to allow — or can we leave the school board in a dilemma as to what, if any, amount may be raised —or can we say that because the taxable property of the district was systematically undervalued in 1965 but was legally valued in 1967 the district taxpayers should not *204 because of the transition pay any district taxes for the district current school fund?
C. When the district electors voted in 1965 they had little reason to assume that the existing illegal systematic undervaluation of taxable property could long continue in Bay County. It was widely known at the time of the election that this Court had recently decided a number of cases holding that taxable property should be taxed at just or full cash value. Although this view had been first indicated in 1919 in Camp Phosphate Company v. Allen, 77 Fla. 341, 81 So. 503, and followed in Cosen Investment Co. v. Overstreet, 154 Fla. 416, 17 So.2d 788, great emphasis upon the precedent that just or full value is constitutionally required was evinced in the following recent cases: State ex rel. Glynn v. McNayr (Fla.1961), 133 So.2d 312; McNayr v. State ex rel. DuPont Plaza (Fla.), 166 So.2d 142, text 144, 145, decided July 10, 1964, and Walter v. Schuler (Fla.), 176 So. 2d 81, decided June 28, 1965. “Fair market value” and “just valuation” were declared to be “synonymous” in Walter v. Schuler, supra. These cases arose largely because of financial crises in the school systems of certain counties and the need for broader based local taxation school support. When the tax millage was voted in 1965 the litigation and the decision in Walter v. Schuler, supra, had been given wide publicity and the decision was being widely implemented. It came as no surprise to Appellants when tax valuations were increased from below fifty per cent of fair market value to fair market value.
D. I find nothing in Section 10, Article XXI, or the statutes implementing it, which connects the millage voted in 1965 to the tax roll or assessment of 1965, as Appellants contend. The Appellants would pin the school authorities down in fixing the 1967-1968 district budget to the 1965 tax roll on the novel assumption that insofar as their future district taxes are involved their vote on the millage irrevocably restricted the school authorities very closely to the status quo of the 1965 illegal assessment which existed at the time of the election. Current district school taxes are not tied to tax valuations of prior tax years, nor to district school budgets of the years in which millages are voted. Current district taxes within the millage limit voted connect only with the current budget and current assessed valuation of the year in which such taxes are levied.
Section 10, Article XII, State Constitution, provides a means and method by which taxpayers in school districts may place a limitation upon millages that may be imposed upon their property for school district purposes. Such taxpayers vote only upon a millage limitation, not upon a static sum of money geared down to a budget of a former fiscal year or down to a former assessment valuation — and this is so because the Constitution refers to millages and not to a particular budget sum or assessed valuation. It is provided in said Section 10 “that any tax authorized by this section shall not exceed ten mills on the dollar in any one year on the taxable property of the district.” (Emphasis added.) Despite this language, the majority opinion would retroact the district school tax to the year 1965 and the tax valuation of property and the district budget of that year rather than prospectively to the tax valuations and school district budget of “any one year” in the future.
E.I fail to see how the principle of equity which presumably follows the law can be seized upon to roll back the Bay County district current school taxes for the fiscal year 1967-1968. Reliance upon Board of Public Instruction of Hendry County v. State ex rel. Hilliard (Fla.App.), 188 So.2d 337, decided on January 28, 1966 and affirmed by us in 191 So.2d 561, appears mis-founded. Section 8, Chapter 63-250, Acts of 1963, was brought into the Florida Statutes as Section 193.03. The rollback provisions of this 1963 statute were applied to millages voted in 1963 under Section 10, Article XII, State Constitution, on the Hen-dry County tax roll of 1965 in Board of *205 Public Instruction of Hendry County v. State ex rel. Hilliard, supra. The District Court only presumed to grant relief because of the rollback authority of Section 193.03. However, Section 193.03 was amended by Chapter 65-258, Acts of 1965, which became a law on June 4, 1965 and effective January 1, 1966, and was divided into two sections, now appearing as Sections 193.03 and 193.-031, F.S. Section 3 of said Chapter 65-258 provided that “Nothing contained [herein] shall require the reduction of millage authorized to be levied pursuant to the provisions of section 10, article XII, of the constitution of Florida.” This section became Section 193.032, F.S.1967, and it negates the effect of the holding in the Hendry County case insofar as district school taxes levied on and after January 1, 1966 are concerned. The taxes levied here are for the year 1967. When the electors voted in November, 1965 they were on notice there there was no legislative authority for a mandatory district tax rollback.
F.I also fail to see how the taxpayers of the Bay County School District can be placed in a specially privileged class and relieved by equity in whole or in part of the district taxes which were levied in 1967. I do not see that they are faced with any more hardships than were the taxpayers involved in McNayr v. State ex rel. DuPont Plaza, supra, wherein this Court held that county taxing authorities did not have discretion to carry taxable property on the tax rolls at fifty per cent of fair market value; but instead were mandatorily required there and then to double the value of such property. Countless thousands of taxpayers in our state were required to go from one year to the next from the old illegal undervalued assessments to the one hundred per cent or just value assessment without our interposing to give them equitable relief in the transition (see my concurring opinion in McNayr v. State ex rel. DuPont Plaza, supra). When our decisions corrected the illegality of undervaluation in ad valorem assessments, it was assumed the correction applied to all tax assessments and would not be held to “freeze” district school levies to illegal undervalued assessments of 1965.
G. Equity is supposed to follow the law, but here the whole thrust of Appellants’ complaint is that they should be continued the privilege of following an illegal assessment despite the Constitution, state laws and our Court decisions to the contrary.
H. It seems incongruous and unfitting that we should depart in this instance from the one hundred per cent fair market value assessment principle on the flimsy predicate here advanced; having held resolutely to that principle up to now. I think it is for the Legislature and not the Court to innovate in this area of taxation. It is recognized that the constitutional provision and laws relating to school district millage elections are archaic and confusing and tend to breed taxpayer irresponsibility. In all probability they will be repealed or modified in the near future by the Legislature and the people. In the meantime, the needs of the schools should not be made to suffer on the basis proposed here, i. e., that the millages duly voted for the schools should not be fully implemented because these Appellant-electors claim they thought their choice of millage only connected to the status quo ante, that is, within close range to the prior budget and assessed valuation and not to future school needs and not to future corrected or full cash value assessments.
It seems to me that if we grant this unusual type of relief to the Bay County district, taxpayers in many other county districts can with equal merit claim the right to reduction or elimination of their district taxes based on situations existing at the time of the 1965 biennial district millage election. This would further inject turmoil in the public school finances.
To recapitulate: I am greatly concerned that we are proceeding on some basis of equity to intervene in the legislative field and roll back district millages which the Legislature has specially said are not required to be reduced because of the transition to full value assessment.
*206 How can we logically say, for how can we know district electors were misled at the 1965 district election by the then undervalued assessment of $61,000,000 of district property and then existing budget of $579,000 into voting 10 mills. How can we say the electors would not then have voted 3 mills had the taxable property been assessed at full cash value ? Only last Tuesday, November 7, 1967, several counties voted district millages of much more than 3 mills despite the fact .the taxable property of their districts was assessed at full value. It is sheer speculation, which can never be established concerning what considerations appealed to the district electors when they voted 10 mills in 1965.
The 10 mills were voted without the electors knowing at what value the Tax Assessor would assess the property of .the district in future years. However, they had strong indications at the time of the election that .the Tax Assessor would be compelled to assess the district taxable property at full value, which in fact he had to do in 1967.
It is very strange equity here aids those who have benefitted by illegality of assessment and especially so after the illegality of assessment has been replaced by legal assessment.
THOMAS and THORNAL, JJ., concur.