STATE, ex rel. BRINCEFIELD, et al v. DADE COUNTY, et al.
No. 67-12539.

Circuit Court, Dade County.

November 15, 1967.

Byrd V. Duke, Jr., North Miami, for petitioners.

Thomas C. Britton, County Attorney, St. Julien P. Rosemond, Assistant County Attorney, for respondents.

J. GWYNN PARKER, Circuit Judge.

This cause having come on to be heard upon alternative writ of mandamus issued herein and response filed by the respondents and after hearing and considering the evidence offered together with the exhibits introduced and further having heard argument of counsel for the respective parties hereto the court finds as follows —

The petitioners, State of Florida, ex rel. Robert E. Brincefield, Charles C. Ermer, Ralph I. Perrotto, R. C. Leppert, and Anthony Pappalardo, are journeyman plumbers resident in Dade County who in January, 1967, took the master plumber's examination given by the Dade County plumbing contractors' examining board in order to qualify themselves for certificates of competency as master plumbers. Such a certificate would entitle them to engage in the plumbing contracting business throughout Dade County. An alternative writ of mandamus was issued herein, pursuant to sworn petition, directing the respondents, Dade County, a political subdivision of the state of Florida, and Sam Bloom, Nat Fechtner, Joe A. Adam, Joseph W. Campbell, George Nash, and Ben Schoenfeld, as constituting the duly appointed and acting plumbing contractors' examining board in and for Dade County, to appear and show cause why they should not immediately issue to each of the petitioners a certificate of competency as master plumbers. Respondents filed, in due course, a return to the alternative writ.

The examination taken by the petitioners consisted of two general parts — the first consisted of an objective question-type examination given on January 14, 1967, which all five petitioners passed; the second required the preparation of isometric draw-

ings for sanitary and water systems for a two and one-half story building, according to plans furnished by the examiners. Petitioners failed to pass the isometric part of the examination which they took on January 21, 1967; they herein seek redress through mandamus from the consequences of their failure to pass that part of the examination requiring the preparation of isometric drawings.

Petitioners' chief complaints are — (1) isometric diagrams or drawings are not authorized nor required by the Dade County Code or the South Florida Building Code; (2) the grading of the papers of petitioners was not uniformly done when compared with the papers submitted by three successful applicants; and (3) the grading was not done on a "percentage basis."

Sections 10-8 and 9 of the Dade County Code set up general examination standards to be followed, requiring approval by the county commission, in establishing "special standards or kinds of examination for particular trades or specialties." Resolution no. 11046 (respondents' exhibit A) is a resolution duly passed by the Dade County board of county commissioners authorizing various examining boards (of which the plumbing contractors' examining board is one) to include a practical examination to be given by the examining board. This resolution authorizes the examining board to require the preparation of diagrams, plans and sketches, if such preparation is actually an integral part of the work of the particular specialty examined. H. O. Lasseter, a master plumber for over 30 years, one time member of the Miami plumbers' examining board, and an owner of a local plumbing contracting company, testified that the preparation of isometric drawings for both sanitary and water from plans and specifications is a *must* in all plumbing contracts of any consequence. The requirement of a registered professional engineer's seal for plans and specifications of buildings having more than 125 fixture units is only for the plans and specifications as required in South Florida Building Code, section 4601.5 (e) (2) (petitioners' exhibit 13), and does not apply to the isometric drawings that are made *from* the plans and specifications. The court finds that the preparation of the isometric drawings is an integral part of the work of a master plumber and, therefore, it was not improper for the respondent board to require the drawings.

As to petitioners' contention that the examination papers were not graded uniformly, it is evident that there were some small errors in the actual grading of the papers, however, even with

all errors indicated being in favor of the petitioners, it is not shown that any of the petitioners would have passed the examination. The objective question portion of the examination was passed by all petitioners and is not here questioned. Only as to the isometric drawings do petitioners contend the grading was not uniform. All drawings are numbered; no applicant's name appears thereon. Each applicant's drawing is graded and reviewed by two or three of the master plumbers on the board. There is a matter of judgment exercised in assessing errors, and the value to be awarded each error, but in no instance has it been indicated that there was any grievous irregularity in exercising judgment in this regard. In the testimony produced the court finds that while some discrepancies did exist in the grading it is not sufficient to indicate any arbitrary or unfair treatment of the petitioners by the examining board.

Petitioners further contend that the isometric drawings were not graded on a "percentage basis." For example, the isometric drawing for the water system contains 80 fixtures. The respondents determine the number of errors on the paper and multiply the number of errors times 1.25 to arrive at the deduction to apply against one hundred per cent. If it were determined that there were 20 errors on the water isometric diagram, then the deduction from one hundred per cent would be 25, and a grade of 75% would be awarded to that drawing. Petitioners contend that the proper and correct way to grade the paper would be to determine how many *possible* errors there are on the entire drawing. Each fixture may have the possibility of two or three errors, such as error in placement, size of pipe, labeling of fixture, et cetera. This may aggregate a total of 200 (as a hypothetical example); then, determine how many errors are made and deduct this from the total of 200 and arrive at a percentage grade in this fashion. The court finds that the board uniformly applied its system of grading to all applicants, those passing and those who failed, and it is not for this court to substitute its judgment for that of the examining board for what is a proper grading system as long as the system used is not shown to be arbitrary or devoid of logic and reason.

So long as the respondents conduct the examinations fairly, and uniformly, in accordance with lawful authority, and apply their rules and regulations uniformly and grade the results of the examinations uniformly, the court will not disturb the proceedings of the board, unless it is clearly shown to be arbitrary or devoid of logic and reason. See State v. Board of Eletrical Examiners (Fla. App. 1958), 101 So.2d 583.

The purpose of mandamus is not to establish a legal right but to enforce a legal right that has already been clearly established. State, ex rel. Glynn v. McNayr, 133 So.2d 312. The question presents itself as to whether in this mandamus proceeding the respondents have a clear and indisputable legal duty and petitioners have established a clear right to the issuance of the certificates of competency certifying that they are duly qualified to hold themselves out as master plumbers under the provisions of chapter 10 of the Code of Metropolitan Dade County. The petitioners failed to demonstrate their qualifications for such certificates of competency by failing to pass the prerequisite examination; the examination was reasonably fair and uniformly and impartially conducted and graded. In the absence of a clear showing that the board was guilty of arbitrary or capricious action in the exercise of the discretionary powers vested in the board, then, mandamus would not lie.

It is accordingly ordered and adjudged as follows — (a) The petitioners' prayer for peremptory writ of mandamus is denied; (b) The alternative writ of mandamus heretofore issued by the court is discharged and quashed; (c) Petitioners' petition for writ of mandamus and this cause is dismissed with prejudice at the cost of petitioners; (d) The file in this cause shall be sealed in order to prevent prospective master plumbers from reviewing the examination questions and answers that were introduced into evidence.